Good morning. May it please the court, I'm Elizabeth Olsen-White for the United States. Good morning, counsel. And I am going to try to save two minutes for a rebuttal. We'll see if I remember to do that. The district court's order granting the defendant's motion for a new trial must be reversed, because the newly discovered evidence on which that motion was based is neither material nor exculpatory, and the district court's implicit conclusion that a new trial would probably result in an acquittal is implausible, illogical, and unconstitutional. And without the new trial, even before the new evidence showed up? Yes. Yes, he did. The district court, the defendant was convicted by a jury, and the district court initially sentenced him to one-year probation. At that sentencing hearing, the district court acknowledged three times that the evidence was sufficient to support the jury's verdict. But the court called the parties back the next day and said that it was going to sua sponte order a new trial. It bothered him quite a good bit, and why? It did. Well, there were two areas. One is the court said flat out that he did not, that the court did not believe that this conduct should be a felony. And he said, yes, Congress has the right to make this conduct a felony, but I express reservations about that. This was destruction of mail by a U.S. postal employee, and with all respect to the district court judge, that's simply not his call. Well, he could have granted, he just could have granted Rule 29. He could have. There was no motion for Rule 29. He could have invited one. He could have. He did not. He didn't do that, did he? He didn't. He didn't. But despite his reservations, he plowed ahead. I mean, the evidence in this trial, the victim put the greeting cards out in the mailbox for pickup. The defendant was the mail carrier assigned to the route that day. An eyewitness saw the defendant throw a handful of mail into one of these big commercial dumpsters behind a fast food restaurant, and the postal supervisor retrieved those torn, ripped greeting cards from that dumpster about two hours later. Now, the defendant didn't testify at trial, so there was no admission by the defendant that he was there at the dumpster that day. But the jury nevertheless convicted, and the court found that the evidence was sufficient. This newly discovered evidence, which is a few photographs of the dumpster that were taken the next day, what those show is that 16 hours after the supervisor took the mail out of the dumpster, at 11 o'clock the next morning, the dumpster contained two plastic bottles and two little pieces of paper. That's the newly discovered evidence. Now, the defendant says that if he had had those photographs, he would have testified. He would have testified that he was there at the dumpster when the witness saw him there, and that he was throwing items in the dumpster, but he wasn't throwing in the mail. He was throwing in these other things, these two plastic bottles and a number of other items that were not shown in the photographs taken the next day. So the question here is whether it is logical or plausible to believe that in a new trial where the jury had all the evidence that it had in the first trial, plus the defendant's admission that he was there at the dumpster, the dumpster in which mail from his route was found, the jury probably would have acquitted him. And What is the discretion that the district court judge has to grant a new trial? The judge has the discretion to grant a new trial based on newly discovered evidence if the evidence is material, if it is not merely impeaching. Without new evidence, what's the standard for his granting a new trial? Actually, the initial grant of the new trial, the judge did not have any discretion to do. I mean, there was no motion for a new trial in the district court, what this court has made very clear. He didn't. The defendant then did move. For a trial based on newly discovered evidence. I mean, the defendant did not make a motion for a new trial based on 33A, the other one. You know, the defendant's motion was based on these newly discovered photographs and on his contention that because of these photographs that show that 16 hours later there were two plastic bottles in the dumpster, the jury probably would have acquitted him in a retrial. Now, the district court, when the district court initially ordered the new trial sua sponte, he had in his head a clearly erroneous factual assumption. What the district court said is that he believed that if the defendant had been allowed to testify that he thought he was throwing away advertising supplements or other printed material and these cards were just mixed in inadvertently, that the jury might have had reasonable doubt about his subjective intent. Now, that factual assumption is clearly erroneous for three reasons. First of all, because the defendant disclaimed it. I mean, at the sentencing hearing, the judge said, you know, were you throwing away advertising supplements? And he said no. The items were, it was an empty pack of cigarettes, an empty granola wrapper, some paper towels, a water bottle, a juice bottle. So the defendant himself disclaimed this defense theory that the judge proposed. Second of all, these pictures obviously don't show any advertising supplements or printed materials. And why do you think that the judge granted a new trial or would have granted it without the new evidence? Well, the judge actually made his reasons quite clear. First of all, he said that he did not, his conscience would not allow him to enter a felony conviction for this conduct. He does, he, the court simply did not think that this conduct should be a felony. And as I say, I mean, with all respect, that's not the judge's call. He was relying on this erroneous factual assumption. And he said, I mean, he said several times that he thought this case should have been resolved with a misdemeanor plea. Now, he didn't say that in his final order. Not in the order. No, in the hearing, Judge Fletcher was asking about the initial, I thought Judge Fletcher was asking about the initial sua sponte order. And when he granted that, he explained that he thought this case should have been negotiated to a guilty plea to a misdemeanor. And again, and, you know, and he said that for whatever reason, the Postal Service insisted on going forward with that. Now, suggesting that the government had not been willing to negotiate a plea, there's nothing in the record to explain why the judge believed that to be so. But the broader point that I would make is that even if that had been correct, again, with respect, that's not the judge's call to make. I mean, charging decisions and plea negotiations are exclusively in the realm of the executive branch. Usually we don't see many cases where the district court grants a new trial. It's true. We just don't see that. It's true. And so what strikes me is, you know, the judge was there. He saw the witnesses testify. He worked with this case for a while. He clearly heard all the testimony. He thought about it. He obviously couldn't sleep. I mean, he says he had a hard time sleeping. And he gave some reasons initially that were not correct, and he called him on it, and he understood that he couldn't grant a new trial. But in the end, he decided to go ahead and do it. And why don't we – why isn't he entitled to considerable deference from us? He was there. He saw the whole thing. He was there. He feels that, you know, in interest of justice, whatever the standard is under the new trial statute, that this case warranted a new trial so that this fellow could testify. Well, actually, what the court said was that he thought that this case should have been resolved with a misdemeanor plea. He didn't think that this offense conduct should be a felony. And so the principle in that initial order – Well, he said – he proposed that. Why can't – he said why can't we – why isn't there some way to work out a – recording this as a misdemeanor? And again, you called him on that, and you told him he couldn't, and then he realized that he couldn't do that. That's correct. And in fact, you know, the judge – to the extent that a judge injects himself in plea negotiations or makes those sort of comments, I mean, that's plain error. That's reversible error. That is something that judges are not supposed to do. This is a separation of powers issue. Congress has a role to play. The executive branch has a role to play. And the judicial role to play is to make sure that the evidence is sufficient to support the verdict, which the judge found. I've got 45 seconds left if I could try to save that.  I'll give you a minute. Okay. Thank you. Good morning. Michael Kennedy here for Mr. De Los Santos, the police, the court. The standard under Rule 33, whichever way you go, is in the interest of justice. I think in the beginning you see that Judge Jones, he had it right in his gut, as my mentor Irving Younger would say. He just didn't latch upon the right. Counsel, could you pull the microphone a little closer to you? Absolutely, Judge Hunt. I'm hearing you. Absolutely, Judge Hunt. Thanks. He didn't get it right in the beginning, but his instincts after seeing the witnesses, hearing the witnesses, going through the trial, and remember this was a five-witness trial that the jury deliberated two or three times longer than the trial itself. They said they were deadlocked twice. An Allen charge was given within the Allen charge that said this case could not be better tried in a second trial. And then all of a sudden, after all this is over, the actual scene of the alleged incident, the photographs are available, and the government makes light of what it should not. De Los Santos' defense was that he threw items which were not mail into the dumpster. The photographs showed the exact items that he threw into the dumpster, which was one of the findings made by Judge Jones. He made those statements before he ever saw the photographs. He made them in respect to an employment interrogation that the government conceded under Garrity it could not use at trial. So he wanted to testify. He wanted to say, I threw items into the dumpster, but all of the testimony was misleading that there were no other items in the dumpster. Then all of a sudden, with the photographs, the photographs are worth a thousand words, he could then defend his case. The government makes a lot of its eyewitness, but they do not analyze the case from the perspective of De Los Santos' defense. The eyewitness originally called and said she saw something. She didn't say that she saw him throw mail in. She said he was odd, so I called. During trial, she said, oh, I saw him throw mail in the dumpster, but then she handed him a letter after she says she saw that, which was mailed and received. Now, actions speak much louder than words, but I think an inference that Judge Jones drew in analyzing this case is that it is highly unlikely that if someone sees someone throwing away mail, your response is, oh, hey, take my letter and get rid of it, too. So it wasn't the fact, there wasn't a defense that Mr. De Los Santos wasn't at the dumpster, that he didn't talk with this individual. The defense was that he threw items other than the mail into the dumpster. And on that basis, Judge Jones found that with a jury that was hung twice on the evidence without Mr. De Los Santos' testimony, the jury would acquit. Now, the standard for this comes from the Alston case, the Kellington case that Judge Fletcher wrote, and it's a highly deferential standard. We're looking at what would happen at the second trial, and Judge Jones made his decision based upon seeing all the witnesses, hearing the testimony that at a second trial of Mr. De Los Santos testified that he threw the specific items into the dumpster. The photographs would show that those items, some of them were there. And incidentally, if we look at the photographs in the excerpt of records, it's only a small portion of the dumpster that they chose to take photographs of. It's not the entire dumpster. So the other items that he threw in there could have been in there but not captured by photographic evidence. That the testimony by all the witnesses that there were no other items in the dumpster, the only items in there was the mail, all of that would make it probable that there would be an acquittal and that it wasn't merely cumulative evidence or merely impeaching evidence. In fact, the photographs themselves were admissible under Rule 401 and 402 as substantive evidence. It was admissible under Rule 607 as evidence that contradicted the testimony independent under the Castillo case. And so that in combination with Mr. De Los Santos' testimony, the judge granted a new trial. He understood the Hickson standard. He understood the five-part test. And that was one. Hitch didn't go through the five-part test. He did not. But as we pointed out in the briefing, the courts presumed the judge knows the law. The five-part test was set out in the original motion by Mr. De Los Santos' trial counsel, who was not me. The government responded with the five-part test in the Harrington case. It was not I. I'm sorry? It was not I. Owen Kellington? I'm just correcting your grammar. I always will take correction. Thank you, Your Honor. And with that note, I stand corrected. Thank you. And he went ñ it was briefed fully, Your Honor. And I think that he ñ what was important is that the five-part test is factual in nature. And he made the factual findings that the defendant would have testified if he'd had this evidence. Do you think the judge was just so determined to grant this guy some relief that it didn't make any difference what the factors were? He was just going to grant the motion. Once the motion for a new trial was filed, that was it? No, Your Honor, I don't believe so. If we were here on the original status conference hearings of the 18th or 19th, when the government presented him with the evidence that it was unclear for a time whether the court could make its own motion under Rule 33, but once they gave him binding 9th Circuit authority that he could not do so, I don't think we'd be here. I think it's the combination. And I would concede as well that if it was just his concerns about the lawyer who tried the case, because we bring up the ineffective, there is a 9th Circuit case the government cited that says ineffectiveness alone isn't enough in terms of Rule 33, the Hahnemann case. But when you combine the testimony of Mr. De Los Santos with the photographs themselves, it's a proper basis to base the new trial on. And as I said, when I go back to the beginning, I think the judge in his gut had it right. He had a situation where the jury was hung twice. Okay. And maybe he thought, wow, maybe he thought the Allen charge probably wasn't the best idea in this case, and that a retrial should have gone forward on that basis. Then when you present him with the photographs that helped the case so much, he just had to go. Unless there's any questions, I see that I have a minute or two. I'll concede it to the government. Judge Hudd? No, no questions. Thank you. Thank you. Why does the government really make a Federal case out of this? Your Honor, this defendant, you know, Congress has decided that when a U.S. postal employee takes mail that has been entrusted into his care for delivery and destroys that mail, that is a crime that can be prosecuted as a felony. The government went to trial with this as a felony. You know, the district court made an assumption that we refused to attempt a plea negotiation. There's nothing to explain why the court believed that to be true. There's nothing in the record about that whatsoever. Just a couple of comments in response. The defendant says now that his defense was that he threw other items in the dumpster. That was not his defense at trial, however. At trial, his defense was somebody else did this. The argument that he made in closing was mail theft happens, and it happens outside the U.S. Postal Service. So here what we have is the jury rejected that and found that the defendant was the one who threw this mail into this dumpster. And the question under the standard that applies to this case is whether a new trial where the defendant admitted that he was at the dumpster where mail from his route was found, whether that would probably result in an acquittal. And it simply defies common sense to believe that that's true. The one other point that I just wanted to make, if you don't mind, the fact that there were two plastic bottles in this dumpster at 11 o'clock on March 9th does not impeach the testimony of the witnesses who said that the dumpster was empty at 430 on March 8th. Thank you. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted at this time.
judges: Hug, Fletcher, Paez